IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JARROD D. PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | 8:17CV299 |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF NEBRASKA, | ) | **MEMORANDUM** |
| DEPARTMENT OF | ) | **AND ORDER** |
| CORRECTIONS, ROBERT | ) | |
| MADSEN, Warden of NSP Prison, | ) | |
| official capacity, RICHARD | ) | |
| BRITTENHAM, Captain, NSP | ) | |
| Prison, official capacity, DR. J. CHE, | ) | |
| NSP Doctor, official capacity, | ) | |
| DOCTOR T. CHAMBERLAIN, NSP | ) | |
| Doctor, official capacity, and DR. H. | ) | |
| DEOL, Deputy Director of Medical, | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Jarrod Phillips, a pro se litigant now incarcerated at the Tecumseh State Correctional Institution ("TSCI"), filed this action regarding events that occurred at the Nebraska State Penitentiary ("NSP") in Lincoln, Nebraska. The court has granted Plaintiff permission to proceed in forma pauperis, and the court now conducts an initial review of the Complaint (Filing No. 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I.  SUMMARY OF COMPLAINT

Plaintiff sues the Nebraska Department of Correctional Services ("NDCS"), the NDCS Deputy Director of Health Services, and four NSP administrative and medical

officials in their official capacities for failure to protect him from harm and deliberate indifference to his serious medical needs.

In a 147-page Complaint, Plaintiff alleges that on March 20, 2017, he felt a sharp pain in his lower stomach, scrotum, and penis as he was weightlifting at NSP. When Plaintiff saw NSP physician Dr. Che that afternoon, he found a mass in Plaintiff's penis which, according to Plaintiff, prevented him from urinating and "burned like fire, accompanied with blood and puss." (Filing No. 1 at CM/ECF p. 13.) Plaintiff admitted to Dr. Che that 13 months earlier, he "was high on K2 and methamphetamine [and] my cell mate dared me to insert a tiny piece of steel into my urethra and urinate it out like a dart, for $30. Like a fool I accepted the dare and the piece of broke razor immbedded [sic] into me." The razor piece was surgically removed at a local hospital on February 1, 2016. (Filing No. 1 at CM/ECF p. 13.) Plaintiff assured Dr. Che that the mass currently in his penis was not "self-inflicted." (Filing No. 1 at CM/ECF p. 14.)

Dr. Che arranged for Plaintiff to be transported to the Emergency Department at a local hospital the next day. When Plaintiff was explaining his injury to the Physicians' Assistant ("PA") on duty, he admitted the prior razor incident, after which she became "hostile and accusatory" toward him. (Filing No. 1 at CM/ECF p. 14.) She ordered a CT scan and laboratory work, after which she assured Plaintiff he did not have kidney stones, but instead had a 12-millimeter "Unidentified Foreign Object of Unknow[n] Origins." (Filing No. 1 at CM/ECF p. 14.) After the PA told Plaintiff and NSP Sergeant Gates (who accompanied Plaintiff) that Plaintiff would be admitted to the hospital and given painkillers, antibiotics, and an exploratory scope procedure, "a man" allegedly entered Plaintiff's examination room, announced a "change of plans," and "rammed" a catheter into Plaintiff, causing "a pop and extreme pain" that prevented Plaintiff from sitting or standing. Plaintiff characterizes this incident as a sexual assault.

Plaintiff was then transported back to NSP, where NSP medical personnel removed the catheter pursuant to Plaintiff's demand. (Filing No. 1 at CM/ECF p. 35.) Plaintiff claims he did not receive antibiotics or painkillers until 30 days later. During that 30-day time period, Plaintiff was taken to a private urology practice for a follow-up, but was discharged from the practice due to disruptive behavior.

Only after Plaintiff's prison advocate contacted the NDCS regarding why Plaintiff was not being seen and after a psychological evaluation was Plaintiff sent to the University of Nebraska Medical Center for an examination on May 26, 2017. Surgery was performed on June 14, 2017, which resulted in the removal of a black "plastic hollow cylindrical object" that was impacted in Plaintiff's urethra and had to be broken into five pieces with a laser in order to remove it. (Filing No. 1 at CM/ECF pp. 73, 80.)

Plaintiff claims that from March 20, 2017, to June 14, 2017, he unsuccessfully requested that all Defendants provide him medical help for intense pain caused by the foreign object and the catheter incident. He also requested that law enforcement perform a sexual-assault investigation of the treatment he received in the hospital. He accuses the Defendants of placing his "health and life . . . in Recklessly dangerous Fashion by Medical Professional." (Filing No. 1 at CM/ECF p. 4.) Plaintiff alleges that during this time period, he suffered internal bleeding, infection, inability to sleep, deprivation of prescribed "overactive bladder" medication that prolonged his recovery and intensified his pain, panic attacks, a psychotic break, and he feared his own death. He claims that, due to the delay in treatment, he is now unable to get an erection or urinate while standing, and he "[n]o longer think[s] of [him]self as a man." (Filing No. 1 at CM/ECF p. 5.)

Plaintiff requests that all Defendants be terminated from their employment; that his prescription for "Oxybatynn for overactive bladder be reinstated Immediately at previo[u]s dosage"; and $1.5 million in damages.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* [28 U.S.C. §§ 1915(e)](#) and [1915A](#). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. [28 U.S.C. § 1915(e)(2)(B)](#); [28 U.S.C. § 1915A(b)](#).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *[Bell Atlantic Corp. v. Twombly,](#)* 550 U.S. 544, 569-70 (2007); *see also [Ashcroft v. Iqbal,](#)* 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *[Topchian v. JPMorgan Chase Bank, N.A.](#)*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *[Hopkins v. Saunders,](#)* 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *[Topchian,](#)* 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under [42 U.S.C. § 1983](#), a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state

4

law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III.  DISCUSSION

Plaintiff sues the NDCS, the Deputy Director of Health Services for the NDCS, and four NSP employees in their official capacities only. The first issue is whether Defendants are immune from suit under the Eleventh Amendment.

**A.  Sovereign Immunity**

The Eleventh Amendment bars private parties from suing a state in federal court. Suits in federal court against state agencies are similarly barred by the Eleventh Amendment when the suit is in reality a suit against the state. *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See*, *e.g.*, *Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Moreover, a suit may be brought under § 1983 only against a "person" who acted under color of state law. A state is not a "person" as that term is used in § 1983, and is not suable under the statute. *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200-01 (1991). Accordingly, § 1983 does not create a cause of action against the NDCS, and the Eleventh Amendment bars Plaintiff's requests for monetary damages against the remaining Defendants in their official capacities. These claims for relief shall be dismissed.

As to the four NSP medical and administrative Defendants and the NDCS Deputy Director of Health Services, who are all sued in their official capacities, the Eleventh Amendment does not bar a suit against a state official when a plaintiff seeks prospective injunctive relief to prevent future or ongoing violations of federal law.

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (internal quotation and citation omitted)); *Gibson v. Arkansas Dep't of Corr.*, 265 F.3d 720, 720-21 (8th Cir. 2001). Here, Plaintiff's only requests for non-monetary relief are that this court (1) order the NSP to terminate the Defendants' employment and (2) order the NSP to resume his prescription overactive-bladder medication. To the extent termination of one's employment is a proper remedy under § 1983, Plaintiff does not allege that Defendants' constitutional violations are ongoing; rather, Plaintiff seeks to terminate Defendants' employment as a punishment for past misdeeds. Thus, Plaintiff's requested relief of terminating Defendants' employment is barred by the Eleventh Amendment.

Because Plaintiff's only remaining requested relief—that Defendants must continue giving Plaintiff his prescription medication for his overactive bladder—can plausibly be characterized as seeking prospective injunctive relief to prevent future or ongoing violations of the Constitution, this claim for relief could theoretically proceed against the four NSP Defendants (Madsen, Brittenham, Che, and Chamberlain). However, Plaintiff's move from the NSP to the TSCI moots Plaintiff's claim for injunctive relief against them because they are not capable of providing such relief now that Plaintiff has changed institutions. *Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001) (when actions required by injunction would be impossible for correctional-center defendants to execute because plaintiff was moved to another institution, plaintiff's claims for injunctive relief against defendants were moot); *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam) (noting that a case is moot when circumstances change to such a degree that "a federal court can no longer grant effective relief"); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (concluding that claim for injunctive relief against warden was moot because prisoner was transferred to another prison).

Therefore, the only remaining Defendant in this action is Dr. Deol, Deputy Director of Health Services for the NDCS, who presumably has authority over health services rendered at all Nebraska correctional institutions, including TSCI. And the only remaining claim against Dr. Deol is Plaintiff's request that Dr. Deol direct institution staff that Plaintiff be given his prescription medication for his overactive bladder.

### B.  Failure to Protect

Plaintiff alleges that Dr. Deol failed to protect him from being sexually assaulted in the hospital emergency room. To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. [Martin, 780 F.2d at 1338](). Here, the only prison official Plaintiff alleges was present and personally involved in the disputed emergency-room procedure was NSP Sergeant Gates, who is not named as a defendant. Because Plaintiff does not allege that Dr. Deol was present, personally involved in, or had direct responsibility for the alleged emergency-room "assault," Plaintiff has failed to state a failure-to-protect claim upon which relief can be granted. Giving Plaintiff leave to amend his Complaint as to this claim would be futile because the only form of relief Plaintiff requests that is not barred by the Eleventh Amendment—that Dr. Deol be required to direct institution staff that Plaintiff be given his prescription overactive-bladder medication—does not relate to his failure-to-protect claim. Therefore, this claim must be dismissed.

### C.  Deliberate Indifference to Serious Medical Needs

Plaintiff's only remaining claim against Dr. Deol is that he is being deliberately indifferent to Plaintiff's serious medical needs by not directing that Plaintiff be given his prescribed overactive-bladder medication.

The constitutional obligation to provide medical care to those in custody may be violated when officials "intentionally deny[ ] or delay[ ] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) ("[D]elays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim." (quotations omitted)); *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006) ("the knowing failure to administer prescribed medicine can itself constitute deliberate indifference").

To prevail on such a claim, Plaintiff must prove that Dr. Deol is acting with deliberate indifference to Plaintiff's serious medical needs. *See Estelle*, 429 U.S. at 106. The deliberate indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffers from objectively serious medical needs, and (2) Dr. Deol knows of, but is deliberately disregarding, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)); *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (Eighth Amendment claim based on inadequate medical attention requires proof that officials knew about excessive risks to inmate's health but disregarded them and that their unconstitutional actions in fact caused inmate's injuries).

For a claim of deliberate indifference, the prisoner must show more than negligence, more than gross negligence, and mere disagreement with treatment decisions does not reach the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct. *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008). A prisoner's mere disagreement with the course of his medical treatment fails to state a claim against a prison physician for deliberate indifference under the Eighth Amendment. *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004).

Furthermore, "[i]t is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006). To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *Martin*, 780 F.2d at 1338. "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'" *Langford*, 614 F.3d at 460 (internal quotations omitted).

As to Plaintiff's deliberate-indifference claim against Defendant Dr. Deol, Plaintiff's Complaint is deficient in several respects. Specifically, it is not clear whether Plaintiff is currently being given his medication at TSCI; whether Plaintiff has a current, ongoing, serious medical need within the meaning of the Eighth Amendment that requires overactive-bladder medication; if Plaintiff has such a serious medical need, whether Dr. Deol knows about it; and whether Dr. Deol is deliberately disregarding that need by failing to order that Plaintiff be given his prescribed overactive-bladder medication.

Plaintiff will be given leave to amend his Complaint to clarify these facts, in the absence of which this claim will be dismissed for failure to state a claim upon which relief can be granted.

IT IS ORDERED:

1.    Defendant State of Nebraska Department of Corrections is dismissed from this action as not subject to suit under 42 U.S.C. § 1983.

2.    Plaintiff's requests for (a) money damages and (b) termination of employment against Defendants Deol, Madsen, Brittenham, Che, and Chamberlain in their official capacities are dismissed as barred by the Eleventh Amendment. Plaintiff's request for injunctive relief regarding the continuation of his prescribed

medication is dismissed as moot as against Defendants Madsen, Brittenham, Che, and Chamberlain, but may go forward as against Defendant Deol.

3. Plaintiff has failed to state a failure-to-protect claim upon which relief can be granted, and because amendment of the Complaint as to this claim would be futile, such claim is dismissed.

4. Plaintiff is granted leave to file a Supplemental Complaint *solely* to truthfully allege facts regarding Plaintiff's Eighth Amendment deliberate-indifference claim against Defendant Deol in his official capacity. Specifically, Plaintiff must allege facts clarifying whether he is currently being given his medication at TSCI; whether he has a serious, current, and ongoing medical need within the meaning of the Eighth Amendment that requires overactive-bladder medication; if Plaintiff has such a serious medical need, whether Dr. Deol knows about it; and whether Dr. Deol is deliberately disregarding that need by failing to order that Plaintiff be given his prescribed overactive-bladder medication. Plaintiff's Supplemental Complaint shall be filed on or before **December 11, 2017**, in the absence of which this matter shall be dismissed in its entirety without further notice to Plaintiff. **Plaintiff shall *not* attach evidence to his Supplemental Complaint.**

5. The clerk of the court is directed to set the following pro se case management deadline: December 11, 2017—Check for Supplemental Complaint.

DATED this 9th day of November, 2017.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge